**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MOHAMMAD ARSHAD,<br>*Petitioner*,<br>v.<br>JASON BENZEL, *et al.*,<br>*Respondents*. | Civil Action No. 26-6697 (ZNQ)<br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Mohammad Arshad, a noncitizen detained by U.S. Immigration and Customs Enforcement ("ICE") at the Elizabeth Detention Facility in Elizabeth, New Jersey. (Pet., ECF No. 1.) Following an Order to Show Cause (ECF No. 4), Respondents filed a response (ECF No. 7), and Petitioner replied (ECF No. 8).[1] Respondents were ordered to show cause why Petitioner should not be released, identified no individualized justification for his detention, and have submitted nothing since the record closed on June 19, 2026. For the reasons below, and on this record, the Petition is **GRANTED**, and Petitioner shall be released.

## I. BACKGROUND

Petitioner is a native and citizen of Pakistan. (ECF No. 1 ¶ 28.) He alleges that he has lived in the United States for many years, is married to a United States citizen, and operated a

[1] The Order to Show Cause also required Respondents to file a declaration from the Newark ICE Field Office confirming that ICE had received the Court's order prohibiting Petitioner's transfer and written legal advice from the United States Attorney's Office on ICE's obligation to comply with it. (ECF No. 4.) Respondents filed that declaration on June 9, 2026. (ECF No. 6.)

construction business in New York, and that the Department of Homeland Security ("DHS") records reflect pending applications for adjustment of status (Form I-485), a petition (Form I-360), and a travel document (Form I-131), and a National Crime Information Center search that returned no wants or warrants. (*Id.* ¶¶ 29–31, Ex. C.)

On or about March 23, 2026, Petitioner arrived at John F. Kennedy International Airport without a valid advance parole travel document. (*Id.* ¶ 32; ECF No. 7 at 2.) Having expressed a fear of returning to Pakistan, he was placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). (ECF No. 7 at 2.) An asylum officer found no credible fear, but on March 30, 2026, an Immigration Judge vacated that determination, finding a significant possibility of eligibility for asylum. (ECF No. 1 ¶¶ 35, 37 & Ex. A.) DHS then issued a Notice to Appear charging Petitioner as an arriving alien and placing him in removal proceedings under 8 U.S.C. § 1229a, where he seeks asylum, withholding of removal, and protection under the Convention Against Torture. (*See id.* ¶ 41 & Ex. B; ECF No. 7 at 2.) He is not subject to a final order of removal. (ECF No. 1 at 5.)

Petitioner has been in continuous ICE custody since his arrival. (ECF No. 7 at 1.) He alleges, and Respondents do not dispute, that he has received no bond hearing or other individualized custody review. (ECF No. 1 ¶ 45.) Respondents do not contend that he has a criminal record and they identify no parole determination or other individualized assessment of his custody. (*See* ECF No. 7.) Petitioner filed the Petition on June 8, 2026, asserting a Fifth Amendment challenge to his continued detention without individualized review (Counts One and Two) and a Suspension Clause claim (Count Three). (*Id.* ¶ 66–90.) He does not ask the Court to decide his removability or his protection claims. (*Id.* ¶ 6.) The record closed on June 19, 2026. (ECF No. 8.). The Court therefore decides the Petition on the record as it stood when briefing closed.

## II. LEGAL STANDARD

Habeas relief extends to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has jurisdiction because Petitioner is in custody and challenges its legality, *see Maleng v. Cook*, 490 U.S. 488, 490 (1989), and Respondents do not contend otherwise.

As the party seeking the writ, Petitioner bears the burden of establishing his entitlement to habeas relief. *See Walker v. Johnston*, 312 U.S. 275, 286 (1941). But § 2243 separately directs the Court, upon entertaining a habeas petition, to issue the writ or an order directing Respondents to "show cause why the writ should not be granted," and then to "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also Harris v. Nelson*, 394 U.S. 286, 298–300 (1969). Thus, although the ultimate burden of establishing entitlement to relief remains with Petitioner, Respondents' showing — and the evidence supporting it — bears directly on whether the record establishes a lawful basis for Petitioner's continued custody. Here, the material facts are established by the Government's own records, on which Respondents rely, *see* ECF No. 7 at 2 (citing ECF No. 1, Exs. A–C), as well as by Respondents' own account of Petitioner's custody history. Neither party requested an evidentiary hearing, and Respondents have not identified a material factual dispute requiring live testimony. On this record, the Court may determine the Petition based on the evidence before it and dispose of the matter as "law and justice require." 28 U.S.C. § 2243; *see Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013); *Harris*, 394 U.S. at 298–300.

## III. DISCUSSION

### A. The Statutory Basis for Detention

Respondents contend that Petitioner is held under 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that a noncitizen found to have a credible fear of persecution "shall be detained for further consideration of the application for asylum." (ECF No. 7 at 2–3.) The Court agrees that § 1225(b)(1) supplies the statutory authority for detention. That detention is mandatory through the conclusion of removal proceedings unless DHS paroles the noncitizen. *Jennings v. Rodriguez*, 583 U.S. 281, 287–88, 300–03 (2018); *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). The *vacatur* of the negative credible fear determination and Petitioner's placement in § 1229a proceedings do not change that. *See Matter of M-S-*, 27 I&N Dec. 509, 511–12 (BIA 2019); 8 C.F.R. § 235.3(c)(1) (an arriving noncitizen placed in removal proceedings "shall be detained in accordance with section 235(b) of the Act," with parole "only" in accordance with § 212.5(b)); *see also id.* § 1003.19(h)(2)(i)(B) (Immigration Judges lack bond jurisdiction over arriving noncitizens).

The Court recognizes that its decisions in *Valerio v. Joyce*, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025), and *Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192 (D.N.J. Mar. 2, 2026) rejected § 1225(b)(2) as a basis for detaining noncitizens who entered without inspection and have lived in the United States for years, and in *Hueso v. Soto*, No. 26-1455, 2026 WL 539271 (D.N.J. Feb. 26, 2026) addressed circumstances in which the Government released the detainee outright, thereby abandoning its asserted mandatory-detention authority. Having now considered Respondents' response and the distinctions they identify, however, the Court concludes that those decisions do not resolve the present Petition. *See Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *7 (3d Cir. Aug. 28, 2026)

(§ 1225(b)(2)(A) "continues to mandate detention for noncitizens at the border"). Petitioner presented himself at an airport and has never been released, so Respondents' distinctions are well taken.

Respondents alternatively argue that, if § 1226(a) governs, the remedy is a bond hearing at which Petitioner bears the burden. (ECF No. 7 at 3.) That fails for the reasons stated in *Fajardo-Nugra*. Respondents do not claim to have detained Petitioner under § 1226(a), did not follow its requirements, and have provided no hearing under it, and their own authority held that an applicant for admission arrested upon arrival is ineligible for bond under that provision. (*Id.* (citing *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025)).) Petitioner does not contend that § 1226(a) governs. (ECF No. 1; ECF No. 8 at 2–3.) The Court declines to convert a detention into a different one under a different statute with different procedures.[2] The question is whether Petitioner's continued detention under the statute Respondents invoked comports with due process. It does not.

**B. Respondents Have Not Justified Petitioner's Continued Detention**

The Court's June 9, 2026 Order directed Respondents to show cause why Petitioner should not be released. (ECF No. 4.) Respondents' response addressed only the statutory basis for Petitioner's detention. (ECF No. 7 at 2–3.) It did not address Petitioner's constitutional claims, cite

[2] *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted *post-hac* [sic], despite clear indication that Lopez-Campos was not detained under this provision"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court "cannot credit Respondents' new position as to the basis for . . . detention, which was adopted *post hoc* and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing the impropriety of allowing the government to proceed on "*post hoc* justifications for detention"); *cf. Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process . . . not a *post hoc* rationalization, or agency counsel's in-court reasoning").

*Mathews v. Eldridge*, *German Santos v. Warden Pike County Correctional Facility*, or *Diop v. ICE/Homeland Security*, or contend that detention of this duration without an individualized custody review is constitutionally permissible. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (identifying the factors governing the process constitutionally due before the government deprives an individual of a protected liberty interest); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011) (holding that continued detention under § 1226(a) may become unreasonable as its duration increases); *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020) (requiring an individualized inquiry into whether continued detention remains justified). Nor did Respondents identify any individualized basis for Petitioner's continued detention, such as criminal history, dangerousness, flight risk, a parole determination, or any other custody assessment.

The mandatory-detention command in § 1225(b)(1) establishes that Congress has authorized custody. It does not establish that Petitioner's continued confinement, without any individualized review, comports with due process. That is the question the Order directed Respondents to answer, and on this record, they have not answered it.

***1. Petitioner Is Entitled to Due Process***

The Due Process Clause applies to all persons within the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). *Jennings* held that § 1225(b) does not, as a matter of statutory construction, entitle detainees to periodic bond hearings; it did not hold that detention under that provision is immune from constitutional review, and it remanded the constitutional claims. 583 U.S. at 312. *Buele Morocho* concerned detention under § 1225(b)(2)(A) of noncitizens with long residence and did not decide what process a § 1225(b)(1) arriving noncitizen is due. The Court cites it for the

*Mathews* framework the Third Circuit applied to detention without a bond hearing and for its recognition that established connections to this country carry constitutional weight. *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *8 (3d Cir. Aug. 28, 2026) (acknowledging that Petitioners that have lived in the United States for a number of years "have 'established connections' in the country and are entitled to due process rights beyond those provided to noncitizens at the border").

Respondents do not argue that Petitioner, as an arriving noncitizen, is entitled to anything more than the process Congress provided, and the Court does not construct that argument for them. The "entry fiction" on which it would rest was applied in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), to a noncitizen apprehended within twenty-five yards of the border who sought further review of his expedited removal and asylum determination. That case did not involve a noncitizen with years of residence who challenged prolonged civil confinement, and it recognized that noncitizens "who have established connections in this country have due process rights in deportation proceedings." *Id.* at 107; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The Third Circuit has confirmed that *Thuraissigiam* does not displace those protections. *Buele Morocho*, 2026 WL 2546223, at *8. *Shaughnessy v. Mezei*, 345 U.S. 206 (1953), and *Castro*, 835 F.3d at 439-49, concerned the process owed an arriving noncitizen in the admission and exclusion context, and courts that have considered the question have held that they do not foreclose an as-applied challenge to prolonged detention during removal proceedings.[3]

[3] *See, e.g., K-S- v. Warden, FCI-Berlin*, No. 25-cv-288-SE, 2025 WL 3671774 (D.N.H. Dec. 17, 2025), *appeal dismissed sub nom. K-S- v. Ackley*, 26-1157, 2026 WL 2444908 (1st Cir. Apr. 1, 2026) (§ 1225(b)(1)(B)(ii) detainee); *Destino v. FCI Berlin, Warden*, No. 1:25-cv-374-SE-AJ, 2025 WL 4010424, at *3–14 (D.N.H. Dec. 24, 2025), *appeal dismissed sub nom. Destino v. Ackley*, No. 26-1181, 2026 WL 2445577 (1st Cir. July 27, 2026).

This case does not require the Court to decide whether every arriving noncitizen detained under § 1225(b)(1) has the same due process interests as a noncitizen who has lived here for years. Petitioner alleges, and Respondents have offered no declaration or record material to contradict, that he has lived here for many years, is married to a United States citizen, operated a business here, and has pending applications for immigration relief; Respondents argue only that those applications confer no status and do not affect detention authority. (ECF No. 7 at 2 n.3.) Those connections distinguish his liberty interest from that of a person apprehended immediately upon crossing the border with no substantial ties to the United States. That Petitioner arrived at a port of entry and has not been admitted does not alter the analysis; the reasoning of *Buele Morocho* and *Plasencia* rests on a noncitizen's ties to this country, not the manner of entry.

***2. The Mathews Factors***

Neither *Buele Morocho* nor *German Santos* arose under § 1225(b)(1): *German Santos* concerned prolonged detention under § 1226(c), and *Buele Morocho* concerned noncitizens who entered without inspection. But the due process inquiry does not depend on the statutory label attached to a detention. The Supreme Court has sustained mandatory detention during removal proceedings for the "brief period" necessary to complete them, *Demore v. Kim*, 538 U.S. 510, 511 (2003), and the Third Circuit's as-applied decisions build on that premise. *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232–35 (3d Cir. 2011); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–13 (3d Cir. 2020). Although neither the Supreme Court nor the Third Circuit has directly addressed the outer limit on detention under § 1225(b)(1), courts in this District and

Circuit have applied the *German Santos* factors to prolonged detention under § 1225(b), including detention of credible-fear applicants.[4]

Those decisions assess a due process challenge to detention without a bond hearing under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers (1) the private interest affected, (2) the risk of erroneous deprivation and the value of additional safeguards, and (3) the Government's interest, *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *9 (3d Cir. Aug. 28, 2026), and, for prolonged detention, the duration of detention, the likelihood that it will continue, the reasons for delay, and the conditions of confinement, *German Santos*, 965 F.3d at 210–11. Each consideration points the same way.

**a. *Private interest***

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner had been confined for eighty-eight days when briefing closed, in a civil detention facility, without any finding that his confinement serves a legitimate purpose. Respondents have not suggested that his custody has since ended; if he remains detained, he has now been confined for more than six months. (*See* ECF No. 7 at 2.) The Court adopts no bright-line rule. Duration is the most significant factor, and the Third Circuit has located the point at which mandatory detention of a lawful permanent resident becomes unreasonable between six months and one year. *German Santos*, 965 F.3d at 211. Six months is not a threshold; it is the point at which length becomes especially weighty when combined with the likelihood that detention will

[4] *See A.J.R. v. Rokosky*, No. 25-17279 (RMB), 2026 WL 592136 (D.N.J. Mar. 3, 2026), *Farias-Ortega v. Soto*, No. CV 25-17848 (RK), 2026 WL 1587300 (D.N.J. June 3, 2026); *Maksaddzhon A. v. Pittman*, No. CV 25-13734 (MCA), 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025); *C.B. v. Oddo*, No. 3:25-cv-00263, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825–26 (W.D. Pa. 2025).

continue and the absence of any individualized review, and both are present here. Petitioner's detention will last as long as his asylum, withholding, and Convention Against Torture proceedings, including any appeal, and the record does not reflect a merits hearing date or suggest that those proceedings are near an end. Respondents attribute no delay to Petitioner. The duration, and the likelihood that detention will continue for months more, weigh heavily in Petitioner's favor.

**b. *Risk of erroneous deprivation***

The risk is acute because no decisionmaker, neutral or otherwise, has assessed whether Petitioner's detention serves a legitimate purpose. Immigration Judges lack bond jurisdiction over arriving noncitizens, *see* 8 C.F.R. § 1003.19(h)(2)(i)(B); *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 224 (BIA 2025), and the only avenue for release is DHS parole, 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5, which is discretionary and administered by the agency that detains him. Respondents do not suggest that DHS has considered parole for Petitioner.[5] That discretion is not substitute for a neutral decisionmaker. *Cf. Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *28 (3d Cir. Aug. 28, 2026). The risk is greater here because the record reveals no basis for detention: no criminal history is alleged, Petitioner's NCIC check disclosed no wants or warrants, an Immigration Judge has found a significant possibility that he is eligible for asylum, and his family ties and pending applications give him every incentive to appear. An individualized determination would be the only means of establishing whether detention serves any end.

[5] Respondents do not argue that Petitioner was required to request parole from DHS before seeking habeas relief, and the Court would not require it. (*See* ECF No. 7.) Petitioner's claim is that parole review by the detaining agency is an inadequate substitute for neutral review, and a request to that agency could not supply the relief he seeks. (ECF No. 1 ¶ 59.)

**c. *Government interest***

The Government's interest in controlling its borders and keeping noncitizens available for removal is at its height with respect to those who arrive at a port of entry, and Congress's decision to mandate their detention establishes a substantial interest in maintaining custody during removal proceedings. *See Demore*, 538 U.S. at 531. But detention serves the legitimate interests of preventing danger and flight, *Zadvydas*, 533 U.S. at 690, and the mandatory-detention command does not itself establish that Petitioner's continued confinement, after months and without individualized review, remains necessary to serve them. Respondents, ordered to show cause, identified no individualized reason why it does, and they do not argue that a custody hearing or release on conditions would impose an undue administrative burden. (*See* ECF No. 7.)

The Court has considered *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614 (D.N.J. Jan. 8, 2026), which held that § 1225(b)(1) detention of roughly three months had not become prolonged. That decision addressed duration alone, did not apply *Mathews*, preceded *Buele Morocho*, and involved a Government that opposed the petition on a developed record. *See id.* And the five-month period on which it relied has passed: if Petitioner remains detained, he has now been confined for more than six months. *See id.* at *3. (*See also* ECF No. 7 at 2.)

The *Mathews* factors weigh in Petitioner's favor. The constitutional deficiency is not simply the length of Petitioner's detention. It is the combination of substantial and continuing detention with the complete absence of any individualized determination that confinement remains necessary. His continued detention without any individualized custody review before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment as applied to him. The Court has reached the same conclusion with respect to other noncitizens held under § 1225(b)(1) who had no criminal history and no final order of removal, although it previously ordered bond

hearings as the remedy. *See Dhib v. Soto*, No. CV 26-5198 (ZNQ), 2026 WL 1894061 (D.N.J. July 1, 2026) (holding that prolonged detention under 8 U.S.C. § 1225(b)(1) may become arbitrary and violate due process where the petitioner has been detained for several months in a jail-like facility following a lengthy period of parole, without evidence of criminality, parole violations, or delay attributable to the petitioner). Because the Court grants relief on Counts One and Two, it does not reach Count Three.[6]

The Court's holding is narrow. The Court does not find that § 1225(b)(1) is facially unconstitutional, that every noncitizen detained under § 1225(b)(1) is entitled to a bond hearing or to release, or that detention becomes unconstitutional after a fixed number of days. Nor does the Court determine Petitioner's removability or the merits of his applications for asylum, withholding of removal, or protection under the Convention Against Torture. The Court holds only that, on this record, Petitioner's continued detention, with no individualized custody determination, no identified danger or flight risk, and no justification offered by Respondents when ordered to show cause, has become constitutionally unreasonable.

**C. Remedy**

The Court has broad authority to fashion habeas relief "as law and justice require," 28 U.S.C. § 2243, and release is the traditional remedy for unlawful custody, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), although the Court may tailor relief to the violation. Petitioner seeks release or, alternatively, a custody review at which Respondents bear the burden. (ECF No. 8 at 4.) Respondents ask that any hearing place the burden on Petitioner. (ECF No. 7 at 3 (citing *Borbot*

[6] Count Three asserts that the Suspension Clause requires habeas review because no adequate alternative remedy exists. (ECF No. 1 at 8.) The Court has afforded habeas review and granted relief on the due process claims, and therefore need not decide whether the Suspension Clause independently compels that result.

*v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278–79 (3d Cir. 2018)).) On this record, a bond hearing is not appropriate, for three reasons.

First, the Court directed Respondents to show cause why Petitioner should not be released. (ECF No. 4.) They identified no individualized reason why his continued detention remains necessary and have submitted nothing since: no update, no request to supplement the record, and no response to *Buele Morocho*. Due process does not require a second opportunity for the Government to develop an individualized justification after it was expressly directed to identify one and declined to do so. *See Fajardo-Nugra*, 2026 WL 579192 (declining to convert the detention to one under § 1226(a) after the Government failed to establish the basis it invoked); *Hueso*, 2026 WL 539271, at *3–4 (explaining that the Court would no longer salvage the Government's position by recasting the detention and ordering a bond hearing).

Second, a hearing would not remedy the deficiency on this record. The deficiency is that no one undertook an individualized assessment of Petitioner's detention before it reached its present length, and where the Government has failed to undertake any individualized assessment, later review does not necessarily restore what was lost. *See Espinosa Gonzalez Anleo v. Warden*, No. 26CV2818 (EP), 2026 WL 895233 (D.N.J. Apr. 1, 2026) (ordering release where the Government undertook no individualized assessment of detention). A hearing on Respondents' proposed terms, at which Petitioner would bear the burden, would not cure it either, since the Third Circuit requires the Government to justify prolonged detention by clear and convincing evidence, *German Santos*, 965 F.3d at 213–14 (*Borbot*, which concerned § 1226(a) detainees entitled by regulation to a hearing, is not to the contrary). Respondents themselves, moreover, maintain that Immigration Judges lack authority to hold bond hearings for arriving noncitizens. (ECF No. 7 at 3.)

Third, further proceedings would prolong Petitioner's confinement notwithstanding Respondents' failure, after being afforded the opportunity, to identify any individualized basis for it. Release imposes no comparable cost: Petitioner's removal proceedings will continue, and nothing in this Opinion prevents the Government from seeking re-detention on a proper showing before a neutral decisionmaker.[7]

The Court imposes no conditions on release beyond those that existed before Petitioner's detention. Respondents have identified no evidence that Petitioner is a danger or a flight risk, and his pending applications and protection claim give him every incentive to appear. The accompanying Order bars re-arrest under § 1225(b) or § 1226(a) for fourteen days to ensure full effectuation of this judgment, as in *Hueso* and *Fajardo-Nugra*, requires that any later detention comply with all statutory, regulatory, and constitutional requirements, and retains jurisdiction to enforce the judgment.

## IV. CONCLUSION

For the foregoing reasons, the Petition (ECF No. 1) is **GRANTED**, and Petitioner shall be **RELEASED**. An appropriate Order follows.

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[7] Section 1252(f)(1) does not limit the relief ordered here. That provision withholds authority to enjoin or restrain the operation of the detention and removal provisions of 8 U.S.C. §§ 1221–1232 "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The relief here is confined to a single individual in removal proceedings. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).